IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BENJAMIN WHITFIELD,

    Plaintiff,

vs.                                                  Case No. 4:14cv316-MW/CAS

PHILIP D. MANI, et al.,

    Defendants.

                                             /

## REPORT AND RECOMMENDATION

Defendants Mani, Bishop, Clark, Garrison-Curry, Holbrook, and Phillips, removed this case on June 25, 2014. Doc. 1. Plaintiff's complaint is filed as document 7 on this Court's docket. Defendants' filed an motion to dismiss Plaintiff's complaint on August 26, 2014. Doc. 14. Plaintiff filed response to that amended motion on September 22, 2014. Doc. 16.

Procedurally, Plaintiff had filed an affidavit as support for his response. Doc. 16, Ex. B (doc. 16 at 16-18). An Order was entered advising Plaintiff that his response must be considered without reviewing the attached affidavit because extrinsic documents are not be considered when reviewing a motion to dismiss. Doc. 17 (citing to doc. 12). In light thereof, Plaintiff was given additional time in which to respond should he desire to file an amended response. That deadline, October 23, 2014, has

passed and Plaintiff has filed nothing further. The amended motion to dismiss, doc. 14, will be considered along with Plaintiff's "amended response." Doc. 16.[1]

**Motion to dismiss, doc. 14**

Defendants' amended motion to dismiss asserts that Plaintiff's complaint fails to state a Fourteenth Amendment violation, fails to state a First Amendment claim for retaliation against Defendant Knight, and argues that Defendants are immune from suit due to sovereign immunity. Doc. 14. Defendants also contend that Plaintiff's claims for compensatory or punitive damages are barred by § 1997e(e).

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[2] "A claim has facial plausibility when the plaintiff pleads factual content that

---

[1] Although titled as Plaintiff's "amended response," doc. 16, Plaintiff has not filed any other response to the amended motion to dismiss. Presumably, Plaintiff so titled the document because Defendants' motion is an amended motion. Plaintiff's "amended response" will be referred to as his "response" in this Report and Recommendation.

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); *see also* Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 127 S.Ct. at 1966). The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

---

Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678, 129 S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "  Id. (quoting Twombly, 550 U.S., at 555, 127 S.Ct. 1955).

Courts should take a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6).  Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.  The first consideration is whether the complaint presents "well-pleaded factual allegations"which are entitled to a presumption of truth or, whether, the complaint merely asserts "legal conclusions" which "are not entitled to the assumption of truth."  Id. at 679, 129 S.Ct. at 1950.  If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief."  Id.  If so, a motion to dismiss should be denied.  Id., at 680, 129 S.Ct. at 1950-51 (citations omitted).

**Allegations of the complaint, doc. 7**

Plaintiff was housed at Madison Correctional Institution at the time of the events in question.  Doc. 7.  All six of the named Defendants are employed at Madison C.I. as well.  Id. at 2.  On December 19, 2013, Plaintiff advises that he wrote a grievance against Defendant Garrison-Curry.  Id. at 3.  Following that grievance, Plaintiff was directed to see Defendant Garrison-Curry "concerning being granted a phone call about

a family member's medical issues." *Id.*[3] Plaintiff was directed into the hallway and Officer Knight had Plaintiff face the wall to be pat searched. Plaintiff contends that during the search, "Officer Knight's hand inappropriately touched Plaintiff's private part." *Id.* Plaintiff also contends that no other inmates were searched as Plaintiff was searched. *Id.* at 4. Officer Knight stood watch while Plaintiff was in Defendant Garrison-Curry's office until Defendant Clark came to relieve Knight. *Id.*

The following day, January 24, 2014, Plaintiff wrote an informal grievance concerning the allegedly inappropriate touching by Knight. *Id.* at 4. Plaintiff also wrote an informal grievance against Defendant Garrison-Curry on that same day alleging retaliation. *Id.*

Plaintiff alleges that on January 27, 2014, Defendant Clark put him in administrative confinement due to his informal grievance against Knight. *Id.* Defendant Clark also told Plaintiff "he was not pleased" that Plaintiff had written the informal grievance and then "held up" a "blank inmate request stating that an anonymous inmate had written a request alleging that Plaintiff had been taking advantage of inmates in G1-dorm." *Id.* at 4-5. Plaintiff claims Defendant Clark was "trying to bluff" him, but confined Plaintiff "pursuant to the Prison Rape Elimination Act." *Id.* at 5.

The next day, Plaintiff was issued four separate disciplinary reports by three different Defendants. Doc. 7 at 5. Defendant Holbrook wrote Plaintiff an allegedly false

---

[3] Plaintiff indicates that he went to the Central Building to see Defendant Garrison-Curry on January 23, 2013, doc. 7 at 3, but considering the events are alleged to have taken place after Plaintiff's December 2013 grievance, it is assumed that the events took place in January of 2014 instead.

disciplinary report for "disobeying order," approved by Defendant Clark.  Defendant Phillips wrote Plaintiff an allegedly false disciplinary report for "disrespect to officials," approved by Defendant Clark.  Defendant Bishop wrote Plaintiff an allegedly false disciplinary report for "disorderly conduct," approved by Defendant Clark.  Defendant Holbrook wrote Plaintiff a second allegedly false disciplinary report for "inciting riots," which was also approved by Defendant Clark.  *Id.*

Defendant Mani served Plaintiff with a copy of all four disciplinary reports on January 29, 2014.  *Id.* at 5.  Plaintiff identified six witnesses and documentary evidence as his defense to the disciplinary reports which, he contends, Defendant Mani "did not obtain during his investigation of the four falsified disciplinary reports."  *Id.* at 6.

Plaintiff's disciplinary hearing was held on February 4, 2014.  Doc. 7 at 6.  Defendant Garrison-Curry was a member of the disciplinary team.  *Id.*  Plaintiff's request that she recuse herself was denied.[4]  *Id.*  Plaintiff was found guilty on all four of the reports and sentenced "to a total of 150 days in disciplinary confinement."  *Id.*

Plaintiff brings the following discrete claims: (1) a First Amendment retaliation claim against Defendant Clark for the events which occurred on January 24, 2014; (2) First Amendment retaliation claim against Defendants Phillips, Bishop, Holbrook, and

---

[4] Plaintiff also stated that Defendant Garrison-Curry "incorrectly noted on the disciplinary findings for disciplinary report #216-140112 'that she [was] not present due to being Plaintiff's classification officer . . . ."  Doc. 7 at 14.  Plaintiff reported that "disciplinary team member Lt. J. Burnette advised Plaintiff that CLO's [classification officers] are utilized for hearing process and being Plaintiff's CLO would not have a bearing on the decision of the team."  *Id.*  Plaintiff notes that the disciplinary findings for all four disciplinary reports fail to mention that Plaintiff had requested Defendant Garrison-Curry to recuse herself.  *Id.*

Clark for events which transpired on January 27, 2014; (3) due process and retaliation claims against Defendant Mani; (4) due process and retaliation claims against Defendant Garrison-Curry; (5) additional due process and retaliation claims against Defendant Garrison-Curry for her involvement in the disciplinary hearing. Doc. 7 at 7-16. As relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 17.

**Analysis**

**1.     Due process claims**

Defendants seek dismissal of Plaintiff's Fourteenth Amendment due process claims because Plaintiff did not "have the requisite liberty interest needed to challenge the DRs on due process grounds." Doc. 14 at 4. Plaintiff argues in response that he also lost "10 days of earned gain time for the month of January 2014" and, thus, he has a liberty interest. Doc. 16 at 3. Plaintiff asserts that he is "entitled to a hearing before an impartial fact-finder" which, according to Plaintiff, "Defendant Curry was not an impartial decision maker." *Id.* Plaintiff also challenges that he "was not afforded an opportunity to obtain witness statements because Defendant Mani did not obtain the witness statements from witnesses that [Plaintiff] identified by cell number or obtain the documentary evidence." Doc. 16 at 8. He maintains that he has presented viable due process claims. *Id.* at 10.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. While prisoners may "claim the protections of the Due Process Clause," Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935

(1974),[5] due process does not exist in a vacuum.  Due process exists to protect a liberty interest.  Thus, to proceed with his procedural due process claims, Plaintiff must demonstrate that his injury "is within the scope of the Due Process Clause."  Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (holding that an inmate who has not been convicted of a sex crime "is entitled to due process before the state declares him to be a sex offender") (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).  Plaintiff was not deprived of his life or property, and is "entitled to due process only if he was deprived of 'liberty' within the meaning of the Fourteenth Amendment."  Kirby, 195 F.3d at 1290.

In Sandin v. Conner, 515 U.S. 472, 484-86, 115 S.Ct. 2293, 2300 (1995), the Supreme Court held that an inmate is entitled to the due process protection outlined in Wolff v. McDonnell only if he can show the deprivation of a "protected liberty interest."  In the usual case, the forfeiture of gain time is a protected liberty interest.  Plaintiff did not allege that he had earned gain time forfeited as a result of the disciplinary hearings at issue in this case.  Indeed, had Plaintiff lost such gain time, these claims could not proceed as they would be barred under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994), and Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997).  That is so because a claim for damages that is related to a sentence or conviction that has not yet been reversed or invalidated is not

---

[5] Wolff v. McDonnell held that before an inmate could lose good-time credits, the Due Process Clause requires prisoners be given advance written notice of a charged disciplinary violation, a written statement of factual findings, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.

cognizable under 42 U.S.C. § 1983. Heck, 114 S. Ct. at 2372. In Edwards v. Balisok, the Supreme Court extended Heck and made explicitly applicable in the prison disciplinary setting. The Court held that a "conviction" includes a finding of guilty in a prison disciplinary proceeding that results in a loss of gain time, thus, affecting an inmate's period of incarceration. 117 S. Ct. at 1589. Therefore, the Court concluded that a claim for money damages resulting from defects in a prison disciplinary hearing which resulted in the loss of gain time credits is not cognizable under § 1983. To the degree Plaintiff's challenge is construed to allege he states a viable due process claim because he lost gain time, his due process claims are foreclosed by Heck and Balisok.

It more clearly appears that Plaintiff is asserting a liberty interest because he contends he was not awarded "the 10 days of earned gain time for the month of January 2014." Doc. 16 at 3. In Hartley v. Warden, 352 F. App'x 368 (11th Cir. 2009),[6] the Eleventh Circuit reviewed Florida law concerning incentive gain time and concluded that such an award is discretionary as prison officials are not required to grant a prisoner incentive gain time even in the absence of a disciplinary decision. 352 F. App'x at 371. Thus, because a Florida prisoner "cannot show that he [has] a legitimate expectation of gain-time," the Eleventh Circuit has concluded that "the loss of the eligibility to earn incentive gain time provided by Florida law is not a sufficient liberty interest to invoke the protections of the Due Process Clause." Id. Plaintiff's loss of

---

[6] Pursuant to 11th Cir. R. 36-2, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

Case No. 4:14cv316-MW/CAS

incentive gain time for the month of January 2014 is not sufficient to trigger the protections of the Due Process Clause.

Sandin also "recognize[d] an exception to the 'loss of early release credit' requirement if the condition of confinement 'impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Sandin, 515 U.S. at 484 (quoted in Smith v. Deemer, No. 8:13–cv–2148–T–23TGW, 2013 WL 6332974 at *1 (M.D. Fla. Dec. 5, 2013)).  Ordinarily, placement in confinement alone is not sufficient to state a due process claim, see Rodgers v. Singletary, 142 F.3d 1252, 1253 (11 th Cir.1998) (per curiam) (finding that an inmate was not deprived of a constitutionally protected liberty interest when he was placed in administrative confinement as result of an allegedly false disciplinary report), nor is punishment in disciplinary confinement or segregation after a disciplinary hearing.  See Sandin, 515 U.S. at 485, 115 S.Ct. at 2301 (noting that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.").  Such events come within the ordinary incidents of prison life.  Plaintiff has not alleged any other significant hardship by his 150 day sentence in disciplinary confinement.  Thus, his due process claims are insufficient to bring in the protections of the Due Process Clause because Plaintiff did not lose earned gain time, nor did he experience "an atypical and significant hardship in relation to the ordinary incidents of

prison life" pursuant to Sandin. Defendants' motion to dismiss, doc. 14, Plaintiff's due process claims as stated in counts 3-5 should be **granted**.[7]

**2.     Retaliation claim based on Officer Knight's actions**

Defendants contend that Plaintiff's retaliation claim based on his allegation that Officer Knight conducted a pat search in which "Officer Knight's hand inappropriately touched Plaintiff's private part" is insufficient because the use of pat searches in prison "are a normal part of prison life and, as such, are to be expected by prisoners." Doc. 14 at 10. Thus, Defendants contend that the fact that Plaintiff was subjected to a routine search would not constitute "adverse action" nor would it deter a person from engaging in constitutionally protected speech. Id. at 10-11.

Plaintiff points out that he "was the only inmate out of approximately 50 inmates" in the Central Service Building who was pat searched. Doc. 16 at 4. Plaintiff has shown a plausible connection between the search and his grievance. Id. at 5. In addition, it appears that Plaintiff was treated differently than the other inmates, and although he was subjected to an ordinary search, his allegations suggest it was undertaken in an extraordinary way. Construed liberally, an allegation which reveals a non-standard procedure was used for a routine search, conducted in a way to create additional stress and make Plaintiff more uncomfortable, is sufficient at this stage to state a claim. The motion to dismiss as to this argument should be **denied**.

---

[7] This recommendation still leaves intact Plaintiff's retaliation claim from count 3 against Defendant Mani, his retaliation claim from count 4 against Defendant Garrison-Curry; and the retaliation claim against Defendant Garrison-Curry from count 5. Doc. 7.

Case No. 4:14cv316-MW/CAS

### 3. Immunity

Defendants assert their sovereign immunity as a defense to Plaintiff's request for monetary damages. Doc. 14 at 11-12. Defendants point out that under Stroud v. McIntosh, 722 F. 3d 1294, 1297 (11th Cir. 2013), *cert. denied*, 134 S.Ct. 958 (2014), they waived Eleventh Amendment immunity[8] from suit in federal court when the case was removed from state court, but have not waived liability for damages brought against them in their official capacities under § 1983. *Id.* at 12-13. Plaintiff clarifies in response that each named Defendant is sued in his or her individual capacities only. Doc. 16 at 10. Accordingly, the motion to dismiss on the basis of sovereign immunity should be **denied**.

### 4. Damages

Defendants seek dismissal of Plaintiff's claims for punitive and compensatory damages on the basis that Plaintiff did not suffer physical injury under 42 U.S.C.

---

[8] In Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), the Supreme Court held that a state waives its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of the federal courts such as removing a case to federal court. Lapides, 535 U.S. at 619-20, 122 S.Ct. at 1643-44. Extrapolating the reasoning of that decision, the Eleventh Circuit in Stroud followed the decisions of the Third and Fifth Circuits which held that even though a state may waive its forum-based immunity, it "may still have immunity from liability for particular claims." 722 F.3d at 1301 (relying on Lombardo v. Penn. Dep't of Pub. Welfare, 540 F.3d 190 (3d Cir. 2008) (holding that removal to federal court is a waiver of a state's Eleventh Amendment immunity from private suit in a federal forum, but is not a waiver of a state's sovereign immunity to "defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability.") and Meyers ex rel. Benzing v. Texas, 410 F.3d 236 (5th Cir. 2005), *cert. denied sub nom.* Texas v. Meyers, 550 U.S. 917, 127 S.Ct. 2126, 167 L.Ed.2d 862 (2007)). Thus, "immunity from suit and immunity from liability" are "separate and distinct kinds of immunity . . . ." Lombardo, 540 F.3d at 199 (explaining Meyers, 410 F.3d at 252-53).

§ 1997e(e).  Doc. 14 at 13-14.  Plaintiff contends that § 1997e(e) is inapplicable because he has not claimed that he "suffered a mental or emotional injury."  Doc. 16 at 11.  Because Plaintiff did not suffer physical injury, the only basis for the request for compensatory damages is to compensate Plaintiff for a mental or emotional injury.  Such claims are foreclosed and Plaintiff's request for monetary damages must necessarily be limited to nominal damages as required by 42 U.S.C. § 1997e(e).  Harris v. Garner, 216 F.3d 970 (11th Cir. 2000)[9] (reinstating in part 190 F.3d 1279 (11th Cir. 1999));  Osterback v. Ingram, et al., No. 00-10558, 263 F.3d 169 (11th Cir. 2001) (Table).  Furthermore, the PLRA also precludes an award "of punitive damages in the absence of physical injury."  Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011).  The motion to dismiss those damages claims, doc. 14, should be **granted**.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, doc. 14, be **GRANTED in part** and **DENIED in part**.  Plaintiff's due process claims should be **DISMISSED** for failure state a claim upon which relief may be granted, and Plaintiff's requests for compensatory and punitive damages should be **DISMISSED** pursuant to 42 U.S.C. § 1997e(e).  The motion to dismiss should otherwise be **DENIED**, Defendants required to submit an answer to Plaintiff's complaint within ten (10) days of the date the Order adopting this Report and Recommendation is entered,

---

[9] Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), cert. denied 121 S. Ct. 2214 (2001).  The parts of the panel opinion relevant to this legal issue were reinstated.

and the case should be **REMANDED** for further proceedings on the surviving First Amendment claims for which nominal damages may be available.

**IN CHAMBERS** at Tallahassee, Florida, on January 7, 2015.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**