## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**BENJAMIN WHITFIELD,**

> **Plaintiff,**

**vs.**                                                    **Case No. 4:14cv316-MW/CAS**

**PHILIP D. MANI, et al.,**

> **Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION[1]

Defendants Mani, Bishop, Clark, Garrison-Curry, Holbrook, and

Phillips, removed this case on June 25, 2014.  ECF No. 1.  Plaintiff's

complaint was separated from the state court record and filed as document

7 on this Court's docket.  After the denial, in part, of Defendants' motion to

dismiss, ECF No. 14, discovery was directed, ECF No. 28.

---

[1] The first Report and Recommendation, ECF No. 20, dealt with Defendants' motion to dismiss.  ECF No. 14.  That motion was granted in part.  ECF No. 26. Plaintiff's due process claims were dismissed, leaving only his First Amendment retaliation claims for nominal damages only.

At the conclusion of discovery, Defendants filed a motion for summary judgment.[2]  ECF No. 36.  Plaintiff has filed a response to that motion, ECF No. 45, and the motion is ready for ruling.

Prior to analysis of the summary judgment motion, Plaintiff recently filed a motion for a temporary restraining order and preliminary injunction. ECF No. 54.  The basis for the motion is that a prison official at Plaintiff's current institution, Brenda Phillips, is interfering with Plaintiff's mail. Plaintiff contends it is because Ms. Phillips is related to a Defendant in this case, Russell Phillips.

Defendants oppose Plaintiff's motion.  ECF No. 55.  Defendants argue that Plaintiff is seeking injunctive relief against an individual who is not a party to this case.  *Id.* at 4.  Defendants are correct.  Accordingly, Plaintiff's motion for a temporary restraining order, ECF No. 54, should be denied because Ms. Phillips is not a party to this action.  This Court lacks personal jurisdiction over Ms. Phillips and any order entered in this case would not bind Ms. Phillips.  FED. R. CIV. P. 65(d)(2).

---

[2] An issue arose as to whether Exhibit V should be sealed.  ECF No. 52.  After consideration, all exhibits are unsealed.  *Id.*

**Motion for Summary Judgment, ECF No. 36**

Defendants seek summary judgment on the basis that Plaintiff's allegations of retaliatory disciplinary reports fails to state a claim. *Id.* at 8-17. Defendants argue that Plaintiff received due process for each of the four disciplinary reports issued and, thus, cannot state a claim for retaliation. Even if the Defendants had some personal retaliatory animus, Defendants argued that "the record shows they would have taken the same disciplinary action in the absence of any protected activity." ECF No. 36 at 16-17. In addition, Defendants contend that Plaintiff cannot demonstrate a causal connection between the grievances he filed and disciplinary reports he received. *Id.* at 17.

Defendant Mani seeks summary judgment because Plaintiff stated in his objections to the Report and Recommendation that he did not raise a retaliation claim against that Defendant. *Id.* at 17-18. Furthermore, Defendant Garrison and Officer Knight contend that Plaintiff's retaliation claim based on the manner in which a pat down search was conducted is insufficient because Plaintiff has "admitted the alleged inappropriate touching was inadvertent, not intentional." *Id.* at 19, 21. It is argued that there is no evidence that the pat search was conducted because of

retaliation as opposed to a routine search for officer safety and the security of the institution.  *Id.* at 19.

Defendant Clark  argues that summary judgment should be entered in his favor because there is no causal connection between Plaintiff's grievance and his placement in administrative confinement. ECF No. 36 at 21-22.  Additionally, it is argued that Plaintiff's grievance should not, in this instance, be considered to be protected speech because he made "false insinuations."  *Id.* at 21.  Defendant Clark also seeks summary judgment on the claim that Clark threatened to spray Plaintiff with chemical agents due to retaliation.  *Id.* at 24.  Defendant Clark denies that any threat was retaliatory in nature.  Finally, all Defendants argue qualify immunity is appropriate and they are immune from suit.  *Id.* at 24-25.

**Allegations of the complaint, ECF No. 7**

Plaintiff was housed at Madison Correctional Institution at the time of the events in question and all six Defendant were employed at that institution.  ECF No. 7 at 1-2.  On December 19, 2013, Plaintiff advises that he wrote a grievance against Defendant Garrison.  *Id.* at 3.  Following that grievance, Plaintiff claims he was directed to see Defendant Garrison and, in the process, was subjected to an inappropriate search by Officer Knight.

Believing no other inmates were searched as Plaintiff was, he wrote an informal grievance concerning the allegedly inappropriate touching by Knight. *Id.* at 4. Plaintiff also wrote an informal grievance against Defendant Garrison alleging retaliation. *Id.*

On January 27, 2014, Defendant Clark put Plaintiff in administrative confinement, contending it was due to retaliation for his informal grievance against Knight. *Id.* The next day, Plaintiff was issued four separate disciplinary reports [DRs] by three different Defendants. ECF No. 7 at 5. Defendant Holbrook wrote Plaintiff a DR for disobeying an order; Defendant Phillips wrote Plaintiff a DR for "disrespect to officials;" Defendant Bishop wrote Plaintiff a DR for "disorderly conduct;" and Defendant Holbrook wrote Plaintiff a second DR for "inciting riots." Plaintiff alleged that all DRs were false and were approved by Defendant Clark. *Id.*

Defendant Mani served Plaintiff with a copy of all four disciplinary reports on January 29, 2014. *Id.* at 5. Plaintiff identified six witnesses and documentary evidence for his defense but contends Defendant Mani "did not obtain . . . ." *Id.* at 6. Plaintiff's disciplinary hearing was held on February 4, 2014. Doc. 7 at 6. Defendant Garrison was a member of the disciplinary team and Plaintiff's request that she recuse herself was

denied.[3]  *Id.*  Plaintiff was found guilty on all four of the reports and sentenced "to a total of 150 days in disciplinary confinement."  *Id.*

Plaintiff initially brought both First Amendment retaliation claims as well as due process claims against Defendants Mani and Garrison.  ECF No. 7.  As noted above, the due process claims have been dismissed.  ECF No. 26.

**Relevant Evidence**

**a.    Plaintiff's evidence**

Plaintiff submitted an affidavit in which he stated that on December 19, 2013,[4] he wrote an informal grievance about Defendant Garrison, complaining that "she attempted to bully [Plaintiff] about signing legal papers that had been faxed to her by the United States Department of Justice Assistant United States Attorney General Gregory S. Knapp."  Ex. 11 (ECF No. 47-1 at 71).  Then on January 23, 2014, Plaintiff requested to

---

[3] Plaintiff said that Defendant Garrison "incorrectly noted on the disciplinary findings for disciplinary report #216-140112 'that she [was] not present due to being Plaintiff's classification officer . . . .'"  ECF No. 7 at 14.  Plaintiff said that "disciplinary team member Lt. J. Burnette advised Plaintiff that CLO's [classification officers] are utilized for hearing process and being Plaintiff's CLO would not have a bearing on the decision of the team."  *Id.*

[4] The grievance is submitted as Plaintiff's Exhibit 1.  ECF No. 47-1 at 4.  His grievance was responded to on December 27, 2013, advising that Garrison was interviewed and denied bullying Plaintiff.  *Id.*

make a phone call and was directed by the dormitory housing officer to go to the Classification Department to see Defendant Garrison "concerning being granted a phone call about a family member's medical issues."  *Id.*

Plaintiff arrived in the lobby and Officer Knight told him to leave his coat in the control room.  *Id.* at 72.  Defendant Garrison directed Officer Knight to lead Plaintiff into the hallway.  Once there, Officer Knight ordered Plaintiff to turn and face the wall, and place his hands on the wall to be pat searched.  Plaintiff said that Officer Knight's hand "inappropriately touched [his] private part."  ECF No. 47-1 at 72.[5]  Knight indicated he was following Defendant Garrison's orders and would "stand watch" over Plaintiff while he was in Garrison's office.  While Plaintiff was in Garrison's office, Defendant Clark came in to relieve Officer Knight, and stood watch.  *Id.*

Plaintiff filed an informal grievance on January 24, 2014, concerning being inappropriately touched by Officer Knight.  *Id.*  Plaintiff also filed a separate grievance that same day alleging Defendant Garrison was retaliating against him.  On January 27, 2014, Defendant Clark put Plaintiff in administrative confinement "because [he] wrote" the informal grievance about Officer Knight.  Defendant Clark spoke to Plaintiff in the conference

---

[5] Plaintiff's grievance was submitted as Plaintiff's Ex. 2.  ECF No. 47-1 at 7.

room of Y-dorm and said "he was not pleased with [Plaintiff] having written" the informal grievance.  Clark held up a "blank inmate request, stating that an anonymous inmate had written a request alleging that [Plaintiff] had been taking advantage of inmates in G-dorm." *Id.* at[6] 72-73.  Plaintiff avers that was a "bluff" because Plaintiff has "never taken advantage or ever been accused of taking advantage of anyone."  *Id.* at 73.  Defendant Clark then told Plaintiff he was confining him "pursuant to the Prison Rape Elimination Act."  Plaintiff contends that under Rule 33-602.220(2)(b), he would have had to make a written request stating he "was in fear of Officer Knight" and needed protection from him.  *Id.* at 73.

Plaintiff asserts he should not have been placed in confinement and contends Defendant Clark told Defendants Phillips and Holbrook that he was placing Plaintiff in confinement because he wrote a grievance against Officer Knight.  *Id.*  The following day, on January 28, 2014, Plaintiff says Defendant Holbrook wrote him a DR for disobeying an order, and Defendant Clark approved it.[7]  *Id.*  On that same day, Defendant Phillips

---

[6] That grievance was filed as Plaintiff's Exhibit 3.  ECF No. 47-1 at 9.

[7]  Plaintiff submitted the relevant disciplinary report and disciplinary investigative report as Exhibit 8.  ECF No. 47-1 at 52-63.  The investigative report lists three inmate witnesses who were listed and interviewed, but the report shows the witnesses were not requested to be present at the hearing.  *Id.* at 56.

wrote him a DR for disrespect to officials, which was also approved by Defendant Clark.  *Id.* at 74.[8]  Defendant Bishop then wrote Plaintiff a third DR for disorderly conduct, and Defendant Clark approved that one as well.[9]  *Id.*  Still on that same day, Defendant Holbrook wrote Plaintiff another DR for "inciting riots" and Defendant Clark approved it.[10]  Plaintiff asserts he "never incited a riot."  *Id.*

Plaintiff also states that Defendant Phillips told Plaintiff that "he did not like how [Plaintiff] was kicking Officer Knight under the bus and that it would be along [sic] time before [he] would get out of confinement."  *Id.*  Defendants Phillips, Holbrook, and a third, unknown officer took Plaintiff from Y2116 to Y1107.  *Id.*

---

[8] Plaintiff submitted the relevant disciplinary report and disciplinary investigative report as Exhibit 6.  ECF No. 47-1 at 26-37.  Again, the investigative report lists three inmates who were interviewed, but indicates the witnesses were not requested to be present at the hearing.  *Id.* at 29.

[9] That disciplinary report and disciplinary investigative report was submitted as Exhibit 7.  ECF No. 47-1 at 39-50.  Again, the investigative report lists three inmates who were interviewed, but the witnesses were not requested to be present at the hearing.  *Id.* at 43.

[10] That disciplinary report was filed as Plaintiff's Exhibit 5.  ECF No. 47-1 at 13-24.  As was the case with the other three disciplinary reports, the investigative report for that charge indicates Plaintiff declined staff assistance and listed three inmates, including Mr. Torres, as witnesses.  *Id.* at 15-24.  The disciplinary investigative report shows that no request was made for the witnesses to appear at the hearing.  *Id.* at 17.  In each witness statement, the inmate signed a "voluntary refusal to provide a written statement" to the investigation officer.  *Id.* at 18-20.

Plaintiff asserts in his affidavit[11] that "[u]nknown to" him, Defendant Mani "engaged in retaliation by encouraging witnesses to not provide witness statements, by pointing where he wanted them to sign their signatures, [and] refusing to provide statements because he said he did not have time for the witnesses to write witness statements."  ECF No. 47-1 at 74.  Plaintiff also states that when he went to his disciplinary hearing and learned that Defendant Garrison was chairman of the disciplinary team, he requested she recuse herself because of his December 19th grievance against her which caused her to be placed "under investigation by the Inspector General's Office of F.D.O.C."  *Id.* at 74-75.  Defendant Garrison refused to recuse herself.  Plaintiff was found guilty of the four "falsified disciplinary reports and sentenced" to 150 days in disciplinary confinement. *Id.* at 75.

On February 11, 2014, Plaintiff reports that Defendant Clark came to his cell door and threatened to use chemical agents on him because he had written an informal grievance on Defendant Phillips on February 6,

---

[11] To be properly considered as evidence to oppose a summary judgment motion, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  Plaintiff states that the facts presented were unknown to him, and he does not provide facts showing how he came to have any personal knowledge of the matters stated.

2014.  *Id.*  Plaintiff apparently filed a formal grievance and contends that he learned on March 26, 2014, in response to a formal grievance, that Defendant Clark was under investigation by the Inspector General's Office. *Id.*  On April 16, 2014, Plaintiff was transferred away from Madison Correctional Institution to Suwannee Correctional Institution.  ECF No. 47-1 at 75.  On June 4, 2014, Plaintiff was released to general population.  *Id.* Plaintiff contends that "all Defendants participated in various acts of retaliation against" him because he filed grievances.  Plaintiff states that he "never had any problems" with other officers except for the "shift supervised by Defendant John S. Clark, which consisted of [D]efendants Russell J. Phillips and Marcus W. Holbrook."  *Id.*

Plaintiff submitted an affidavit of inmate Aramis Torres who was housed in Y-dorm near Plaintiff's cell on January 27, 2014.  Ex. 14 (ECF No. 47-1 at 94).  Mr. Torres reports hearing a conversation between Plaintiff and Defendant Bishop concerning Plaintiff's request for his legal work.  *Id.*  Mr. Torres heard Defendant Bishop tell Plaintiff "he would not go behind another officer and give" Plaintiff his legal work.  When Plaintiff replied that inmates in confinement are allowed to have their legal documents, Defendant Bishop "got upset" and walked away without giving

Plaintiff a copy of his property sheet, nor did he have Plaintiff "sign the

property receipt."  Mr. Torres denies that Plaintiff told Defendant Bishop "to

get off his ass and go get [Plaintiff's] sh--."  Mr. Torres said that "just never

happen [sic]."  *Id.*

Mr. Torres stated that he saw and heard Defendant Phillips tell

Defendant Holbrook to write disciplinary reports on inmates in different

cells for not having his bed made.  ECF No. 47-1 at 95.  Phillips told

Holbrook to write "#16 a D.R." for his bed not being made, he said "it will be

for kicking Officer Knight under the bus."  *Id.*  Mr. Torres said he heard

Plaintiff say, "My bed is made and you see me sitting up on it."  *Id.*

Mr. Torres denied that Plaintiff ever told Defendant Phillips to tell his "f–ing

officer he can stick a DR up his ass."  *Id.*

Mr. Torres also reports hearing Plaintiff tell Defendant Holbrook that

he had been asking "for grievance forms for the past 2 days and that when

he went to writing that Officer Holbrook wouldn't like it."  *Id.* at 95.

Approximately 5 minutes later, Mr. Torres saw Defendants Phillips,

Holbrook, and another officer walk by his cell holding a video camera.  He

heard Defendant Phillip tell Plaintiff to "cuff up," which he did, and then they

escorted Plaintiff past his cell.  *Id.*

The following day, January 29th, Defendant Mani went to the cell of Mr. Torres and had him put his "signature on 4 witness statement forms where he pointed for me to sign." *Id.* Defendant Mani told Mr. Torres and "several other inmates to just sign [their] names because he didn't have time to wait for [them] to write statements to 4 D.R.[s] that had been written on" Plaintiff. Ex. 14 [ECF No. 47-1 at 95-96].

Mr. Torres had his own disciplinary hearing on February 27, 2014, and was given 30 days in disciplinary confinement. *Id.* at 96. Mr. Torres was placed in cell Y1101 on the south wing of Y-dorm and learned that Plaintiff was there as well, having been there since his removal on January 28, 2014. *Id.* Plaintiff said that Officer Holbrook claimed he was inciting a riot. *Id.* Mr. Torres said "[t]hat never happened." *Id.* Plaintiff told Mr. Torres that Defendants Bishop, Phillips, and Holbrook write him 4 DRs and Plaintiff read the DRs to Mr. Torres. *Id.* Mr. Torres states that "at no time did any of the allegations made by [those] Officers happen and it's made up allegations because that's what Officers will do to inmates for whatever reason." *Id.*

Plaintiff submitted a copy of the Incident Report written by Heather Maurice on or about January 27, 2014. Ex. 17 (ECF No. 47-1 at 106).

Ms. Maurice states that while reviewing inmate grievances, she saw two grievances from Plaintiff in which he alleged "he was 'sexually groped' by" Officer Knight during a pat search." *Id.* Plaintiff further alleged that the "groping was done due to an order" from Defendant Garrison" to Officer Knight "for retaliation against [Plaintiff] for a grievance he [w]rote about her." ECF No. 47-1 at 106. Ms. Maurice advised that copies of Plaintiff's grievances were given to Defendant Clark. *Id.* Defendant Clark noted that Plaintiff was given a physical and no injuries noted. He was then "placed in administrative confinement pending investigation." *Id.* A notation on the bottom of the form by Colonel Valentine noted the incident had been "referred to the Inspector General for further review and action." *Id.*

**Defendants' evidence, ECF No. 36**

On December 19, 2013, Defendant Garrison received a telephone call from an attorney from Washington, D.C. who said he needed to provide Plaintiff with information. Def. Ex. A at 2, ¶4 (ECF NO. 36-2).[12] The attorney requested Garrison receive a fax, have Plaintiff sign, then return the paperwork to the attorney. *Id.* Defendant Garrison advised the

---

[12] Because Plaintiff identified his exhibits by number (such as exhibit 1, 2, or 3) and Defendants identified their exhibits by letter (such as exhibit A, B, or C), only the identifying letter will be used.

attorney that the procedure requested was not proper, but said she would allow it on this occasion because "it was sent with a legal letterhead."  *Id.* Defendant Garrison called Plaintiff out, had him sign the fax, and then returned it as requested.  *Id.*  She advised Plaintiff that in the future, he would have to use the FDOC's legal mail procedures to receive such legal documents in the future.  *Id.* at 2, ¶5.  Plaintiff became agitated and accused her of denying him legal mail and violating his legal rights.  *Id.* Defendant Garrison "responded by explaining the legal mail process a second time" and instructed Plaintiff to leave her office.  *Id.*

On December 30, 2013, Garrison received informal grievance[13] 12-121, in which Plaintiff alleged she bullied him on December 19, 2013.  Ex. A at 2, ¶6.  Plaintiff's grievance began by complaining that Defendant Garrison engaged in "un-called for chastisement" about the fax from the attorney.  Ex. B at 1.  Plaintiff also said: "Ms. Garrison must understand that I'm far different from any inmate that she's ever come in contact with and it would be a very prudent thing for her to communicate with me in a

_____

[13] It appears that Defendant Garrison became aware of the grievance when questioned about it by the responding prison official and given "a chance to respond to" the allegations made in the grievance.  See Ex. E (ECF No. 36-3 at 35).  The grievance has been submitted as Defendants' Exhibit B (ECF No. 36-3).

respectful manner where I can reciprocate my respect in return."  Ex. A, ¶6;
Ex. B at 2.  Defendant Garrison interpreted that statement as a threat.  Ex.
A at 2, ¶6.

On January 23, 2014, a dormitory officer called Defendant Garrison
to report that Plaintiff had a letter indicating a family member was
hospitalized.  Ex. A, ¶7.  Defendant Garrison had the officer send Plaintiff
"to classification to review for possible crisis situation."  *Id.*  At that time,
Defendant Garrison knew Plaintiff "had previously served prison time" for
second degree murder, robbery with a deadly weapon, and writing a threat.
*Id.*  Defendant Garrison also knew that Plaintiff had received a DR for
possession of a weapon.  *Id.*  Indeed, Plaintiff told the disciplinary "team
adjudicating that disciplinary report that he had re-occurring dreams of
stabbing the officer who wrote the disciplinary report."  *Id.*; *see also* Ex. C.
Defendant Garrison also was aware that Plaintiff "had a prior history of
disciplinary reports for making spoken threats to staff."  Ex. A at ¶7; *see
also* Ex. D.

Given Defendant Garrison's knowledge of Plaintiff's criminal and
disciplinary history, and the recent grievance Plaintiff wrote about her which
she perceived to be a threat, Garrison requested that Officer Knight

"conduct a pat search" of Plaintiff and stay with her while she interviewed

Plaintiff "concerning the possible crisis situation." Ex. A at ¶8.  Defendant

Garrison said that Officer Knight's pat search was "without incident" and he

stayed outside her office during her interview with Plaintiff.  *Id.*  Plaintiff also

admitted in his deposition testimony that Officer Knight's hand

"inadvertently brushed" his private parts. Ex. E (ECF No. 36-3 at 6).

Plaintiff said, "I don't think it was intentional, to be honest with you."  *Id.*

Defendant Clark was also "made available to stand watch while Officer

Knight attended to another area of the building." Ex. A at ¶8; *see also* Ex.

F at ¶4.

Defendant Garrison met with Plaintiff and reviewed the letter he had

received from his family.  Ex. A, ¶9.  She determined it was not a "crises or

urgent situation at all."  *Id.*  She advised Plaintiff he would have to use the

inmate phones to call his family because it was not an emergency situation.

*Id.*  Unlike their "previous encounter," Defendant Garrison said that Plaintiff

"was calm and indicated that he understood [her] explanations of crisis

procedures and inmate phone use."  *Id.*

Defendant Garrison testified in her affidavit that at no time had she

"intentionally acted in an unprofessional manner towards" Plaintiff."  Ex. A,

¶3.  She declared that at no time had she "ever taken any action against"

him "in retaliation for filing any grievances of any kind or for any other

reason."  *Id.*  She also reiterated that she "did not refuse to recuse [herself]

from the disciplinary hearings" so as to improperly punish Plaintiff.  *Id.*

Defendants submitted the informal grievance Plaintiff filed on January

24, 2014, alleging that Officer Knight sexually groped him while searching

him.  Ex. G (ECF No. 36-8).  The response advised him that his allegations

had been reported to the Inspector General's Office.  *Id.*  Defendants also

submitted the informal grievance Plaintiff filed on January 24, 2014,

alleging Defendant Garrison retaliated against him for submitting the

December 19, 2013, grievance by ordering Officer Knight to search him in

such a manner.  Ex. H (ECF No. 36-9).  Again, Plaintiff was advised that

his allegations had been reported to the Inspector General's Office.  *Id.*

On January 27, 2014, Assistant Warden West directed Defendant

Clark to put Plaintiff in administrative confinement to separate him from

Officer Knight based on Plaintiff's allegations that Knight "sexually groped

him."  Ex. F at ¶5 (ECF No. 36-7).  Plaintiff's placement in administrative

confinement was in accordance with Rule 602.053 and the Assistant

Warden's instructions.  *Id.*  Defendant Clark states he "did not hold up a blank inmate request" and "did not attempt to 'bluff'" Plaintiff.  *Id.*

On January 28, 2014, Defendant Holbrook was assigned as housing officer in Y-dormitory.  Ex. I at ¶4.  At approximately 7:30 a.m. that morning, Defendant Holbrook ordered all inmates in the dorm "to get their beds made and get dressed."  *Id.*  At around 8:00 a.m., Defendant Holbrook was conducting "formal count" and noticed that Plaintiff had still not made his bed.  Ex. I at ¶5.  Because Plaintiff was in violation of his order, he sought and obtained Defendant Clark's approval to write Plaintiff a disciplinary report.  *Id.*

At the time Defendant Holbrook issued Plaintiff the disciplinary report, he was unaware of why Plaintiff was in administrative confinement "other than that it was due to a pending investigation."  Ex. I at ¶3.  Defendant Holbrook denies ever issuing a DR based on facts that were known to be false.  *Id.*  He denies issuing Plaintiff the disciplinary report to retaliate against him.  *Id.*  Defendant Holbrook specifically states that the

"disciplinary report stemmed solely from the fact that [Plaintiff] disobeyed [his] direct order for him to make his bed . . ."  Ex. I at ¶7.[14]

On January 28, 2014, Defendant Phillips was assigned as Y-Dormitory Confinement Supervisor and Plaintiff was housed in call Y-2116. Ex. L at ¶4 (ECF No. 36-13).  At approximately 9:00 a.m., Defendant Phillips was conducting a routine security check of the West Wing and as he approached Plaintiff's cell, Plaintiff said to him "something along the lines of 'Hey Sarge.  You can tell you f— officer that he can stick that DR he is writing me in his ass.  I will stay under the covers if I want to."  *Id.* at ¶4-¶5.[15]  Defendant Phillips considered Plaintiff's comments disrespectful to both himself "and, although he was not present at the time, to [Defendant] Holbrook . . . ."  *Id.* at ¶6.  Defendant Phillips sought and obtained permission from Defendant Clark to write Plaintiff a DR for disrespect to officials.  *Id.*  Defendant Phillips declares that the DR was solely due to Plaintiff's comment.  *Id.* at ¶7.  He denies making any

_____

[14] The disciplinary report is attached as Exhibit J (ECF No. 36-11).

[15] This comment was in reference to the DR written by Defendant Holbrook.   Ex. L at ¶5.

statement that the DR[16] was for kicking Officer Knight "under the bus."  *Id.*

Defendant Phillips states that Plaintiff's claim that the DR was retaliatory is

"completely untrue."  *Id.* at ¶3.  He states that he has "never intentionally

issue[d] a disciplinary report based on false facts . . . ."  *Id.*

Defendant Bishop clarifies that Plaintiff was placed into administrative

confinement on January 27, 2014.  Ex. O at ¶3 (ECF No. 36-16).  Plaintiff's

property was inventoried, but Plaintiff was allowed to keep some of his

property.  *Id.*  Defendant Bishop did not inventory Plaintiff's property, but

was assigned to give Plaintiff "the property he was entitled to keep while

housed in administrative confinement."  *Id.*  As Defendant Bishop

approached Plaintiff's cell to give him his property, Plaintiff asked for his

legal documents.  *Id.* at ¶5.  Defendant Bishop told Plaintiff he was not

comfortable going through Plaintiff's property because he had not

inventoried it.  *Id.* at ¶6.  He "wanted to ensure that the property records

accurately identified the property that was stored and the property that

[Plaintiff] kept."  *Id.*  Defendant Bishop told Plaintiff to submit a "request to

the Property Sergeant, who could fulfill the request to the extent allowed by

the" rules.  *Id.*

---

[16] The DR issued by Defendant Phillips was filed as Exhibit M (ECF No. 36-14).

Plaintiff "immediately became loud and belligerent, shouting something along the lines of '[y]ou need to get off your ass and do your f–ing job!  Go get my sh–!"  Ex. O at ¶7.  Defendant Bishop took no action that day, but on January 28, 2014, "after going home the previous night after the end of [his] shift and returning to work the next day," he obtained approval from Defendant Clark to write Plaintiff a DR.  *Id.* at ¶8.  Defendant Bishop issued Plaintiff a DR for disorderly conduct, and states in his declaration that it "stemmed solely from the fact that [Plaintiff] became loud and belligerent towards" him.  *Id.*  Defendant Bishop further states that he did not issue the DR[17] to retaliate against Plaintiff.  *Id.* at ¶3.

At approximately 3:30 p.m. on January 28, 2014, Defendant Holbrook was conducting a routine security check of the West Wing of Y-Dorm.  Ex. I at ¶8.  As he approached Plaintiff's cell, Plaintiff "began to yell down the wing to other unidentified inmates."  *Id.*  Plaintiff said "something along the lines of 'Come on man.  We got this sh–.  I'm a professional at this.  Y'all stand up with me we ain't [gonna] take this sh–!"  *Id.*  Defendant Holbrook ordered Plaintiff to cease his behavior "numerous times before he complied."  Ex. I at ¶9.  By making those comments, Defendant Holbrook

---

[17] The DR was submitted as Exhibit P (ECF No. 36-17).

believed Plaintiff was in violation of the rule "prohibiting inmates from

inciting or attempting to cite riots, strikes, mutinous acts, or disturbances,

especially considering that [Holbrook] had to order [Plaintiff] to stop

numerous times before the complied with the order." *Id.* Defendant

Holbrook sought, an obtained, approval from Defendant Clark and issued

Plaintiff a DR for inciting a riot. Ex. I at ¶9.[18] Defendant Holbrook asserts

that he wrote that fourth DR because of Plaintiff's "inflammatory

statements" and not for any retaliatory reason. Ex. I at ¶10.

Defendant Clark approved the DRs written by Defendants Bishop,

Phillips, and Holbrook after they brought them to his attention and

requested permission to write them. Ex. F at ¶6. Defendant Clark "did not

instruct" Bishop, Holbrook or Phillips "to write the disciplinary reports for a

retaliatory purpose." *Id.* Defendant Clark had no reason then, and no

reason now, "to doubt that the charging officers' renditions of the facts in

the disciplinary reports were and are true." *Id.*

On January 29, 2014, Defendant Mani was on duty from 2:00 a.m.

until 6:00 p.m. and was assigned to investigate the four DRs issued to

Plaintiff. Ex. T at ¶4. Defendant Mani provided Plaintiff with notice of the

---

[18] That disciplinary report was submitted as Exhibit R.  (ECF No. 36-19).

disciplinary report issued by Defendant Holbrook, log number 216-140109. *Id.* at ¶5.  He obtained Plaintiff's statement and version of the events as well as obtained the rules and cell inspection sheet Plaintiff had requested and included them in the disciplinary packet. *Id.*  Defendant Mani also attempted to interview the witnesses requested by Plaintiff. *Id.* at ¶6.  He could not identify or locate all of the witnesses because Plaintiff could only identify the witnesses "by bunk numbers, not by name." *Id.*[19]  Some of the bunk numbers "were unassigned, meaning no inmate was housed in the bunk at that time." *Id.*  Defendant Mani states that he also attempted to interview the inmates who were identified, but "all of those inmates voluntarily refused to provide witness statements." *Id.*  He avers that he "would have taken their witness statements if they wished to provide a statement." *Id.*

Defendant Mani gave Plaintiff notice of the DR issued by Defendant Phillips, log number 216-140111.  Ex. T at ¶7.  He interviewed Defendant

---

[19] Plaintiff admitted in his deposition that he "requested witnesses by cell location, because [he] didn't know any of the inmates' names." Ex. E (ECF No. 36-3 at 22).  The only inmate Plaintiff knew was Aramis Torres because he had been in the dormitory with Plaintiff. *Id.*  The two other inmate witnesses were unknown to Plaintiff. *Id.* Plaintiff did not, however, "personally see or hear [Defendant] Mani interact with Aramis Torres or any of the other inmates regarding the witness statements for any of" the four DRs. *Id.* at 26.

Phillips as well as Defendant Holbrook, and took Plaintiff's written statement of his version of events.  *Id.*  He attempted to interview Plaintiff's requested witnesses, but again could not locate all of them because Plaintiff did not know their names, only bunk numbers.  *Id.* at ¶8.  Defendant Mani states that all of the inmate witnesses identified "voluntarily refused to provide witness statements."  *Id.*

Similarly, for the remaining two disciplinary reports, Defendant Mani provided Plaintiff with notice of the charging report, took Plaintiff's statement, interviewed the charging officers (Defendants Bishop and Holbrook), and attempted to obtain witness statements from those inmates Plaintiff listed who could be located.  Ex. T at ¶9-12.  All of the inmates refused to provide witness statements.  *Id.* at ¶10, ¶12.

Defendant Mani denies the claim that he failed to obtain witness statements as requested by Plaintiff.  *Id.* at ¶3.  He states that had any witness "expressed a desire to write a witness statement, [he] would have allowed him to do so" and the witness statements would have been included in the disciplinary report packet for that report.  *Id.*  He avers that he has "never intentionally refused to obtain witnesses or evidence requested by an inmate in connection with a disciplinary report . . . ."  *Id.*

Plaintiff also concurred in his deposition that he did not intend to "make a retaliation claim against Mani, because [he] didn't have any evidence that he retaliated."  Ex. E (ECF No. 36-3 at 38).[20]

On February 4, 2014, Defendant Garrison "was scheduled to be the chairperson of the disciplinary hearing team" for the four DRs issued to Plaintiff.  Ex. A at ¶10.  The hearing team "heard the four disciplinary reports separately, but during a single hearing, not four separate hearings." *Id.*  Defendant Garrison states she "had no involvement whatsoever in the decision to issue the disciplinary reports," was not a witness to any of the charged infractions, and did not investigate any of the reports.  *Id.*  Thus, although Plaintiff asked Defendant Garrison to recuse herself from the hearing team, it "was determined" that there was no need for Garrison to do so because she had no involvement in the charges.  *Id.*  Defendant Garrison stated that she did not let any of Plaintiff's prior grievances or any investigation into his grievances, affect her decision at the hearing."  Ex. A at ¶11.  She advised that she found Plaintiff "guilty of the infractions based solely on the evidence presented at the hearings."  Id.

---

[20] Plaintiff said he only raised a due process claim against Defendant Mani which has now been dismissed.  Ex. E (ECF No. 36-3 at 38).

Defendant Clark declares in his affidavit that the claims alleged against him are "absolutely untrue."  Ex. F at ¶3 (ECF No. 36-7).  He states that he has not, at any point in time, taken any action against Plaintiff "in retaliation for filing any grievances of any kind or for any other reason."  *Id.* He disclaims ever directing any officers under his supervision "to write false disciplinary reports against any inmate."  *Id.*  He says that had he "even suspected that the four disciplinary reports were false, [he] would not have approved them."  *Id.*  Furthermore, he would have referred the officers "to the appropriate authorities for disciplinary action up to an including termination."  *Id.*  Defendant Clark also denies ever having "threatened to spray an inmate with chemical agents, unless the inmate was acting in a manner that required the use of chemical agents and the use of chemical agents was allowed under the FDOC's rules."  *Id.*  He specifically denies threatening to spray Plaintiff with chemical agents on February 11, 2014. *Id.* at ¶7.

Defendants also submitted a video recorded interview of Mr. Aramis Torres, the inmate who submitted an affidavit that was presented with Plaintiff's evidence, Ex. 14 (ECF No. 47-1).  The beginning of that interview demonstrates that Mr. Torres was informally interviewed.  Because it does

not appear that Mr. Torres gave sworn testimony, that exhibit has not been considered as summary judgment evidence.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

show[21] the court "that there is an absence of evidence to support the

nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case.

Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

Cir. 2004) (citations omitted).  A party must show more than the existence

of a "metaphysical doubt" regarding the material facts, Matsushita Elec.

Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Hickson Corp.,

357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252,

106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences

must be resolved in the light most favorable to the nonmoving party,

---

[21] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is

a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380,

127 S.Ct. 1769 (2007) (cited in Ricci v. DeStefano, 129 S.Ct. 2658, 2677

(2009)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the nonmoving party, there is no genuine issue for trial."

Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks

omitted) (quoted in Ricci, 129 S.Ct. at 2677).

**Analysis**

**1.    Retaliation claim against Defendant Mani**

Defendant Mani seeks summary judgment in his favor because

Plaintiff stated in his deposition that he only intended to state a due

process claim against that Defendant and not a retaliation claim. ECF No.

36 at 17-18.  Defendant Mani also points out that Plaintiff stated in his

objections to the first Report and Recommendation, ECF No. 20, that he

agreed with Defendants' objections that "a claim of retaliation was never

made against Defendant Mani."  ECF No. 36 at 18 (citing ECF No. 25 at 7).

Plaintiff only claimed "that 5 prison officials violated" his First Amendment

rights by retaliating against him.  ECF No. 25 at 5.  Thus, summary

judgment should be granted in Defendant Mani's favor as Plaintiff has withdrawn his First Amendment claim against Defendant Mani.[22]

## 2.   Retaliation claim against remaining Defendants

The retaliation claims against Defendants Bishop, Clark, Phillips, Garrison, and Holbrook are based on the four disciplinary reports issued by Defendants Phillips, Bishop, and Holbrook, with the approval of Defendant Clark.  Plaintiff also asserts a retaliation claim against Defendant Clark for placing him in administrative confinement.  Finally, Plaintiff asserts a retaliation claim against Defendant Garrison because she did not recuse herself from participating as the chairman of the disciplinary hearing team.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoted in O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011)).  Thus, issuance of false disciplinary reports because an inmate has filed grievances states a valid First Amendment claim.  See Malloy v. Peters, 617 F. App'x 948, 950 (11th Cir. 2015);

---

[22] The claim raised in count 3 was against Defendant "Mani for denying Plaintiff due process of law, in violation of Plaintiff's First Amendment right of the United States Constitution."  ECF No. 7 at 12.  Plaintiff's argument to the contrary in his summary judgment response, ECF No. 47 at 17, should be rejected.  Moreover, Plaintiff has not shown a causal connection between Defendant Mani's actions and his grievances.

O'Bryant, 637 F.3d at 1212; Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).  To prevail on such a claim, an "inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].'"  Mosley, 532 F.3d at 1276 (quoted in O'Bryant, 637 F.3d at 1212).  The third aspect of this claim, the causal relationship, is the issue in dispute in this case.[23]

It is now well established that a prisoner cannot state a viable claim of retaliation for a disciplinary charge "when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process."  Malloy, 617 F. App'x at 950 (holding that prisoner could not state a retaliation claim "because he was found guilty of the behavior underlying both disciplinary charges and was afforded adequate due process at the disciplinary hearing.") (citing O'Bryant, 637 F.3d at 1215)).

---

[23] It is undisputed that Plaintiff engaged in constitutionally protected speech when he filed grievances about Officer Knight and Defendant Garrison.  It is also accepted that he "suffered adverse action" when he received the disciplinary reports and was sentenced to 150 days in disciplinary confinement.

In other words, there is no causal connection between a disciplinary report and a prisoner's freedom of speech if the disciplinary action would have been taken regardless of the prisoner's protected speech.  O'Bryant, 637 F.3d at 1217 (citing Mosley, 532 F.3d at 1278, n.22).  "Any possible causal connection between the protected activity (the grievances) and the harm (the disciplinary charges and sanctions) is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity." O'Bryant, 637 F.3d at 1219-20.

In the O'Bryant case, defendants and the prisoner-plaintiff had different versions of the events at issue.  The prisoner claimed the disciplinary reports were false and based on "fabricated facts underlying the disciplinary reports."  637 F.3d at 1211-12.  He also argued that he "was not afforded adequate due process" in the disciplinary hearings.  637 F.3d at 1213.   After reviewing due process requirements from Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that prisoners must receive (1) advance written notice of the charge, (2) an opportunity to call witnesses and present documentary evidence, and (3) a written statement of the evidence relied upon by the factfinder), and Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356

(1985) (holding that the findings of a prison disciplinary team must be "supported by some evidence in the record"), the Eleventh Circuit noted the clear implication "that courts are not to conduct exhaustive reviews of the findings of prison disciplinary panels." O'Bryant, 637 F.3d at 1214 (citing Hill, 472 U.S. at 457, 105 S.Ct. at 2775).  The Court concluded that "O'Bryant received procedural due process in [his] two disciplinary hearings," and held that under those circumstances, a prisoner "cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." O'Bryant, 637 F.3d at 1215 (adopting view of the Eighth Circuit and citing to Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008) (involving allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule"); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (noting inmate alleged officer was lying but concluding that the finding of an actual violation of prison rules was based on some evidence of the violation and "essentially checkmates [the prisoner's] retaliation claim"); and Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) ("[N]o claim can be stated when

the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.").  The Court concluded that "[t]o find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance."  O'Bryant, 637 F.3d at 1216.

The success of Plaintiff's claim lies in whether or not there was a causal relationship between the allegedly retaliatory action [the disciplinary reports] and his protected speech.  If the evidence demonstrates that Plaintiff was found guilty of the charged disciplinary reports and was afforded due process, summary judgment must be granted in Defendants' favor.  That is so because the causal connection would be severed if he "would have been disciplined anyway."  637 F.3d at 1219-20.

Plaintiff has presented evidence to show that he was not afforded due process and that the charges made in the disciplinary reports were false.  Plaintiff stated in his own affidavit that "[u]nknown to" him, Defendant Mani interfered with his due process rights in the disciplinary hearing because he pointed to where he wanted the inmate witnesses to sign their signatures on the form, and refused to allow them to "provide statements

because he said he did not have time for the witnesses to write witness

statements." ECF No. 47-1 at 74. A reasonable inference from this

declaration is that Plaintiff was unaware at the time of the disciplinary

proceedings that his witnesses were not provided an opportunity to make a

statement. Although it is unknown how Plaintiff came to have such

knowledge, it may reasonably be inferred that he learned of that fact when

inmate Torres provided his affidavit. The Torres affidavit provides evidence

that Defendant Mani told the inmate witnesses to "just sign" their names

"because he didn't have time to wait for [them] to write statements fo 4

D.R.[s] that had been written on" Plaintiff. ECF No. 47-1 at 95-96. The

Torres affidavit also provides additional evidence that all four of the

disciplinary reports were false. It does not, however, provide evidence that

Defendant Mani had a retaliatory motive.

Defendants dispute that evidence. Defendant Mani specifically

declared that all of the inmate witnesses "voluntarily refused to provide

witness statements." He said that he "would have taken their witness

statements if they wished to provide a statement." Each Defendant who

wrote a disciplinary report denied that it was false or retaliatory.

That conflicting evidence is sufficient to create a genuine dispute of material fact.  It is unclear whether or not Plaintiff was found guilty after receiving due process because it is disputed that Plaintiff was able to call witnesses in his defense.  It cannot be assumed that regardless of whether or not Plaintiff was able to present inmate witness testimony, that he still would have been found guilty based solely on the "some evidence" testimony of the charging officer.  Doing so would render a prisoner's right to call witnesses an illusory sham if his evidence were of no value.[24]

Accordingly, the motion for summary judgment should be denied as to Defendants Clark, Holbrook, and Phillips.  For each of those Defendants, Plaintiff provided evidence showing he engaged in protected speech and that each of the Defendants were aware of that speech as they made comments to Plaintiff about Plaintiff's grievance against Officer Knight.  Plaintiff demonstrated a causal relationship between his speech and the retaliatory disciplinary reports.

However, there has been no evidence submitted showing that Defendant Bishop was aware that Plaintiff had written grievances or that

---

[24] A disciplinary team may properly make credibility determinations and resolve conflicting witness statements, but that does not mean that a prisoner is not entitled to at least present his witness statements.

the disciplinary report he wrote Plaintiff for disorderly conduct was due to

retaliation.  Plaintiff makes only a conclusory assertion in his affidavit that

Defendant Bishop wrote a disciplinary report that was false.  ECF No. 47-1

at 74.  That is insufficient to demonstrate a causal connection and

summary judgment should be granted in favor of Defendant Bishop.

Additionally, summary judgment should be granted in favor of

Defendant Garrison.  The basis of Plaintiff's claim against her is that she

did not recuse herself from acting as the disciplinary team chairman.

Plaintiff contends she should have done so because he had previously filed

a grievance against her.  If all it takes to show bias is the fact that an

inmate has at some point in time filed a grievance against a prison official,

substantiated or not, then it would potentially render a very small pool of

prison officials who could sit on a disciplinary hearing team.

Moreover, Plaintiff has pointed to no wrongdoing by Defendant

Garrison in sitting on the disciplinary team.  Defendant Garrison was not

involved in the events which formed the basis of the disciplinary reports,

and she had no involvement in the investigation of the reports.  There is no

evidence to show that Defendant Garrison held a personal bias against

Plaintiff.  Plaintiff merely requested she recuse herself because he had filed

a grievance against her.  Failing to do so, in and of itself, is not a proper basis for a First Amendment retaliation claim.

Because there is a genuine dispute of material fact concerning Plaintiff's retaliation claims against Defendants Clark, Holbrook, and Phillips, the motion for summary judgment should be denied.  However, because there is insufficient evidence to support a retaliation claim against Defendants Mani, Garrison, and Bishop, the summary judgment motion should be granted in their favor.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 36, be **GRANTED in part** and **DENIED in part**.  Plaintiff's First Amendment retaliation claims should be **DENIED** as to Defendants Clark, Holbrook, and Phillips, but otherwise **GRANTED**.  Plaintiff's motion for a temporary restraining order,

ECF No. 54, should be **DENIED** and this case should be **REMANDED** for

further proceedings.

   **IN CHAMBERS** at Tallahassee, Florida, on February 17, 2016.


   S/    Charles A. Stampelos
   **CHARLES A. STAMPELOS**
   **UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

   **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**